## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN  DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MIKE ELDER, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 2:11-CV-02097-RDP |
| | } | |
| DRS TECHNOLOGIES, INC., | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

Before the court is Defendant's Motion to Transfer Venue (Doc. #13), filed on April 25, 2013.  The Motion (Doc. #13) has been fully briefed (*See* Docs. #14, #24, #27), and is properly under submission.  For the reasons outlined below, Defendant's Motion (Doc. #13) is due to be granted.

## I.    Background and Relevant Facts

Plaintiff-Relator, Mike Elder ("Plaintiff") initiated this action by filing a *qui tam* action on June 15, 2011 pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq.*  (Doc. #1).  The Complaint contained three causes of action: (1) presentation of false claims; (2) making or using a false record or statement; and (3) conspiring to defraud the United States.[1]  (Doc. #1).  On October 9, 2012, the United States filed a Notice that it would not intervene at that time.[2]  (Doc. #10).  Consequently, on December 7, 2012, the court ordered the unsealing of the Complaint and service upon Defendant

---

[1]Plaintiff's prayer for relief also included a request for "damages necessary and appropriate pursuant to subsection (h) of the Act." (Doc. #1 at ¶ 96).  However, Plaintiff did not include a Section 3730(h) retaliation claim among his causes of action.

[2]The Notice indicated that the Government's investigation was not complete but would continue.  (Doc. #10).

within 120 days of the order.  (Doc. #11).

Defendant filed the instant motion on April 25, 2013.  (Doc. #13).  Defendant also filed a brief (Doc. #14) and evidence[3] in support of its motion.  On May 16, 2013, Plaintiff filed a Motion for Leave to File a First Amended Complaint (Doc. #23) and a Response in Opposition to Defendant's Motion to Change Venue (Doc. #24).[4]  Defendant filed a Reply in Support of its Motion to Transfer Venue on May 23, 2013 along with one evidentiary exhibit.[5]  (Doc. #27).  Plaintiff filed his Amended Complaint on May 29, 2013 after receiving leave from the court to do so.  (Doc. #30).

Plaintiff's First Amended Complaint states that Defendant discharged him because of his "whistleblower" complaints about Defendant's violations of the False Claims Act.  (Doc. # 30 at ¶ 4).  Plaintiff was employed by Defendant[6] as a telecommunications specialist (and was referred to as a "technician") from October 22, 2007 until November 9, 2009.  (*Id.* at  ¶¶ 11, 13).  Plaintiff worked in Afghanistan from November 2007 through October 2009. (*Id.* at  ¶ 12).  His primary job was to install and instruct the Afghan National Police ("ANP") forces on the use of various communications equipment.  (*Id.* at  ¶ 14).  Specifically, Plaintiff installed two-way radios in ANP vehicles, installed radio towers throughout Afghanistan, tested and organized telecommunications

---

[3]Defendant submitted a Declaration of Richard Buckwalter, the Vice-President and General Manager of DRS Technical Services, Inc. ("DRS-TSI") Tactical Communications and Network Solutions Unit.  (Doc. #14-1).

[4]The substance of Plaintiff's proposed Amended Complaint dismissed the *qui tam* allegations and converted his action to one that is solely an individual claim for retaliatory discharge in violation of Section 3730(h) of the False Claims Act.  Plaintiff's Response in Opposition (Doc. #24) addresses the venue question as if the action was an individual action claiming wrongful discharge from employment.

[5]Defendant's Reply also addresses the venue issue as if the action were solely an individual action claiming wrongful discharge. Defendant submitted a Second Declaration of Richard Buckwalter.  (Doc. #27-1).

[6]Defendant states that Plaintiff was employed by DRS Technical Services, Inc. ("DRS-TSI"), a wholly owned subsidiary of Defendant located in Herndon, Virginia, that "provid[es] communications, networks, security and information technology services that span the globe," including, as relevant here, in Afghanistan.  (Doc. #27-1 at ¶¶ 4-5, 11).

equipment at a Kabul warehouse, and taught the ANP how to use the equipment. (*Id.* at ¶ 15). Plaintiff's work was performed under a defense contract awarded to Defendant in 2003.[7] (*Id.* at ¶ 33). Defendant is a worldwide defense contracting company specializing in technology in various areas. (*Id.* at ¶ 24). Plaintiff maintains that Defendant is headquarted in New Jersey.[8] (*Id.*).

Plaintiff alleges that shortly after he started working for Defendant in Afghanistan, he complained, both verbally and in writing, that Defendant required all employees to charge twelve (12) labor hours daily, regardless of the time worked. (*Id.* at ¶¶ 37-38). Plaintiff contends that after accurately recording his time for the hours he worked, a supervisor instructed him to change his recorded time to reflect twelve (12) hours for each day, instead of the time he actually worked. (*Id.* at ¶¶ 54-55). The next week, Plaintiff was deployed into the field into Eastern Afghanistan. (*Id.* at ¶ 56). After continuing to express concern over Defendant's billing practices, Plaintiff alleges he was deployed to Kandahar for three to four months with no work to do. (*Id.* at ¶ 66). During this time, Plaintiff was instructed to bill twelve (12) hours each day to the contract. (*Id.* at ¶ 67). Plaintiff was then transferred to Barge Matal, which he contends was an area known for intense fighting against the Taliban. (*Id.* at ¶ 69). After returning home to the United States, Plaintiff was informed that Defendant was terminating his employment. (*Id.* at ¶¶ 76-77). Plaintiff maintains that Defendant retaliated against him and terminated him for complaining about activity Defendant knew

---

[7]Plaintiff refers to this contract as a United States Army Communications Contract, believed to be labled: DAAB07-03-D-B013. (*Id.* at ¶ 33). Defendant refers to this contract as the so-called Rapid Response ("R2") Contract. (Doc. #27-1, at ¶¶ 5, 11)

[8]Defendant states it is headquartered in Arlington, Virginia. (Doc. #12-1, at ¶ 3). Plaintiff did not respond to or dispute that Defendant is actually headquartered in Arlington, Virginia in his Response in Opposition. The court has reviewed Secretary of State records for the State of New Jersey and finds that a company named DRS Technologies is registered and incorporated under the laws of New Jersey. However, the court finds that based upon Defendant's evidence and Defendant's website (which, the court notes, Plaintiff has quoted but edited to remove headquarter information), that Defendant is headquartered in Arlington, Virginia.

violated the False Claims Act.  (*Id.* at ¶¶ 78-84).

## II.    Standard of Review

A district court may transfer a civil action to any other district in which it may have been brought "for the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  "The decision to transfer a case to another district is left to the sound discretion of the trial court."  *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991).  The burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice.  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).  The decision of whether to transfer a case under Section 1404(a) is "an individualized case-by-case consideration of convenience of fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations omitted).

Although the purpose of the transfer statute is convenience afforded the parties and witnesses, the district court's power to transfer is "expressly limited...to those federal districts in which the action 'might have been brought.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting 28 U.S.C. § 1404(a)).  Therefore, the court's analysis is a two-part inquiry.  First, the court must determine whether the case "might have been brought" in the transferee court.  28 U.S.C. § 1404(a).  Second, the court must ask whether the balance factors of convenience and justice under the transfer statute weighs in factor of transferring the action to the transferee court.  *See A.J. Taft Coal Co., Inc. v. Barnhart*, 291 F. Supp. 2d 1290, 1307 (N.D. Ala. 2003).

III.     **Discussion**

    A.     **This Case Could Have Been Brought in the Eastern District of Virginia**

Venue is appropriate in "a judicial district in which any defendant resides" or in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2). In a state with more than one judicial district, a corporate defendant resides in any district in that state "within its which contacts would be sufficient to subject it to personal jurisdiction. . . ." *Id.* § 1391(d). The False Claims Act venue provision provides that venue exists in any district in which the defendant can be found, resides or transacts business, or in which any act proscribed by the False Claims Act occurred. 31 U.S.C. § 3732(a).

Because Defendant is headquartered in the Eastern District of Virginia, its contacts with that district are sufficient to subject it to personal jurisdiction there. Therefore, venue is proper in the Eastern District of Virginia because Defendant resides in that district, as the term is defined in the statute. *See* 28 U.S.C. § 1391(d). Under the False Claims Act, venue is also appropriate in the Eastern District of Virginia because Defendant can be found and transacts business there. *See* 31 U.S.C. § 3732(a). Accordingly, the Eastern District of Virginia is an appropriate transferee court because this case could have been brought against Defendant there under 28 U.S.C. § 1391(b)(2) and 31 U.S.C. § 3732(a).

    B.     **The Balance of Factors Weighs in Favor of  Transfer**

Having decided that the Eastern District of Virginia is a proper transferee district, the court must now consider whether transfer of venue promotes convenience and advances the interests of justice. 28 U.S.C. § 1404(a). This analysis "requires a balancing of practical considerations, which centers on convenience of the parties and witness, with the interest of justice, which focuses on

fairness and efficiency." *Barnhart*, 291 F. Supp. 2d at 1309.  The Eleventh Circuit has noted nine

case-specific factors to consider, including:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the
> relative ease of access to sources of proof; (3) the convenience of the parties; (4) the
> locus of operative fact; (5) the availability of process to compel the attendance of
> unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity
> with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9)
> trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11 th Cir. 2005).  Before analyzing these

factors against the facts of this case, the court first addresses Plaintiff's choice of forum, which is

typically entitled to considerable deference.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (19470;

*In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

## 1.      Plaintiff's Choice of Forum

Generally, when determining the propriety of transfer, "[t]he Eleventh Circuit has determined

that a court should be somewhat restrictive in transferring actions; indeed, the plaintiffs choice forum

should not be disturbed unless the movant can show that it is clearly outweighed by other

considerations."  *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1357 (M.D. Ala. 1998) (citing

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)).  Plaintiff correctly cites this

general rule; however, the court finds Plaintiff's choice of forum is due to less deference in this case

because "the operative facts underlying the cause of action did not occur within the forum chosen

by [Plaintiff]."  *Id.* (citations omitted).  "Where none of the conduct complained of took place in the

forum selected by Plaintiff, the Plaintiff's choice of forum is of minimal value in determining

whether to transfer an action."  *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 505

(M.D. Ala. 1994) (citations omitted).

This lawsuit arises from activity that took place in Afghanistan and Virginia. Plaintiff's First Amended Complaint alleges that Defendant retaliated against him and terminated him for complaining about Defendant's purported violations of the False Claims Act, but Plaintiff does not allege any events giving rise to this claim occurred in or are demonstrably connected to Alabama. The majority of the events discussed in Plaintiff's Amended Complaint took place in Afghanistan. Also, Defendant has submitted evidence indicating that Defendant's offices responsible for overseeing its performance of the contract under which Plaintiff worked are located in Virginia. (Doc. #27-1, at ¶ 5). Additionally, all finance personnel responsible for invoicing, timekeeping, and payroll are located in Virginia. (Doc. #27-1, at ¶ 8). Defendant's Human Resources Department and the personnel involved in employment decisions are based in Virginia. (Doc. #27-1, at ¶ 6). Alabama has no connection to this case except that Plaintiff lives here. Because no events underlying Plaintiff's claims occurred in Alabama, Plaintiff's choice of forum is entitled to less deference.[9] Even though the chosen forum is due less deference in this case, the court must nonetheless find that the balance of factors clearly weighs in factor of transfer. *See Robinson*, 74 74 F.3d at 260.

### 2.   Convenience of Witnesses

As it relates to this factor, the court notes that "[i]t is often said that 'the most important

---

[9]The court rejects Plaintiff's argument that the venue question is "dramatically altered" because his First Amended Complaint contains no *qui tam* allegations and states a claim solely for individual retaliation and termination. Although Plaintiff need not prove the merits of his *qui tam* allegations, he must still establish that he engaged in protected activity under the False Claims Act that could lead to a viable False Claims Act action. *See Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 345 (4th Cir. 2010); *United States ex. rel Sanzchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1303 (11th Cir. 2010) (Section 3730(h) "only protect[s] an employee from retaliation when there is a least 'a distinct possibility' of litigation under the False Claims Act at the time of the employee's actions") (internal citations omitted)). Defendant's evidence suggests that all personnel and any decisions related to billing on the contract, which would form the basis of a potential False Claims Act violation, occurred in either Afghanistan or Virginia, and not in Alabama. Thus, any events giving rise to a purported False Claims Act violation occurred outside of Alabama.

factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses." *Harper v. Am. Airlines, Inc.*, 2009 WL 1605800, at \*5 (N.D. Ala. May 18, 2009) (quoting *Hutchen v. Bill Heard Chevrolet Co.*, 928 F. Supp. 1089, 1091 (M.D. Ala. 1996)).  Defendant maintains that most, if not all material witnesses are located in the Eastern District of Virginia or Afghanistan. Employees responsible for preparing and submitting invoices, tracking employee hours, and determining timekeeping obligations for the contract under which Plaintiff worked are located in Herndon, Virginia. (Doc. #14-1 at ¶¶ 6-8).   Government personnel who administered the contract are located in New Jersey, Maryland, and Virginia.  (Doc. #14-1 at ¶ 7).  Defendant also states that some witnesses remain in Afghanistan.  Plaintiff has not identified a single witness who lives in Alabama other than himself, with the exception of "perhaps a local expert witness accountant," and "presumably" those individuals with whom he has interviewed for other jobs.  The location of all other potential witnesses listed in Plaintiff's affidavit is either unknown to Plaintiff or is outside Alabama.  (*See* Doc. #24-1 at ¶¶ 4-5).

The court finds that the convenience of the witnesses factor tips of transferring the action to the Eastern District of Virginia.  Plaintiff resides in Alabama.  The court understands he will testify; however, Plaintiff only "presumes" he would call an Alabama expert or those individuals with whom he has interviewed.  The vast majority of other material witnesses with knowledge of the contract at issue – Defendant's billing practices, and Defendant's decision making regarding Plaintiff's employment – are located in or near the Eastern District of Virginia.  Therefore, "the convenience of the majority of witnesses favors transfer of this action."  *See Insuracorp, Inc. v. Am. Fid. Assurance Co.*, 914 F. Supp. 504, 506 (M.D. Ala. 1996).

3.      **Location of Relevant Documents and Relative Ease of Access to Sources of Proof**

Defendant asserts that all of its relevant documents are located either in Virginia or Afghanistan and that none are located in Alabama.  (Doc. #14-1 at ¶¶ 6-10).  Defendant also states that all documents produced to the government prior to the unsealing of this action were kept in the ordinary course of business in Herndon, Virginia or in Afghanistan.  (Doc. #14-1 at ¶ 9).  Citing two treatises and an unreported order adopting a Magistrate Judge's Report and Recommendation, Plaintiff counters that this factor carries less weight in the current era of technology where documents may be stored and transported electronically.  (Doc. #14 at pgs. 11-12).  Although the court recognizes this factor may not be as influential as it once was, "that access to some sources of proof presents a lesser inconvenience now that it might have absent recent developments does not render this factor superfluous."  *See Watson v. Earthbound Holding*, LLC, 2012 WL 3775760, at *1, 3 (N.D. Ala. Aug. 27, 2012).  Plaintiff cites no documents or other sources of proof located in Alabama and argues only that this factor carries no weight given technological advances.  However, because (1) the majority of documents are located in the Eastern District of Virginia or Afghanistan and (2) Plaintiff can easily store and transport any documentation he has in Alabama, the court finds this weighs in favor of transfer.[10]  *See e.g., Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1340 (M.D. Fla. 2002) (finding that even when plaintiff retained some records at his home, this factor favors transfer because plaintiff could "easily access the source of proof he will need for trial and this factor will not cause him hardship").

---

[10]Moreover, it goes without saying that Plaintiff's argument also makes clear that it will be easier for him to produce and receive documents even if the forum is in Virginia.

### 4.      Convenience of the Parties

Transfer is inappropriate if it would "merely shift inconvenience from the defendant[] to the plaintiff." *Robinson*, 74 F.3d at 260.  Defendant contends that requiring it to litigate this action in a forum remote to the majority of material witnesses and documents favors transfer to the Eastern District of Virginia where the only cost to Plaintiff would be his own costs to attend the trial he initiated and the inconvenience of his counsel.  (Doc. #14 at pg. 10).  Plaintiff responds that Defendant merely prefers to be sued in its home district and that transfer would merely shift the inconvenience to Plaintiff.  (Doc. #24 at pg. 13).  According to Plaintiff the convenience of the parties does not outweigh Plaintiff's choice of forum.  (Doc. #24 at pg. 13).  However, the court has already found that Plaintiff's choice of forum is entitled to less deference in this action. Additionally, to the extent the convenience of the parties requires production of evidence or live testimony from material witnesses other than Plaintiff himself, transfer appears appropriate.  Thus, the court finds this factor weighs slightly in favor of transfer.[11] *See e.g., Madison Oslin, Inc. v. Interstate Resources, Inc.*, 2012 WL 4730877, at *23 (N.D. Ala. Sept. 30, 2012) (finding this factor favored transfer even where five of the plaintiff's corporation consisted of five principal owners and noting that the defendants would incur significant inconvenience if forced to litigate in Alabama and that "such inconvenience is not merely shifted...because defendants bear a greater hardship in traveling to Alabama" than the plaintiff would bear in traveling to transferee forum).

---

[11]Plaintiff states that this factor is a "neutral or 'a wash' in this case."  (Doc. # 24 at pgs. 13-14).  Therefore, even if the court were to accept Plaintiff's representation of the weight assigned to this factor, this factor would not weigh against transferring this action.

5.      **Locus of Operative Fact**

Allegations contained in Plaintiff's First Amended Complaint, along with the evidentiary affidavits demonstrate that most, if not all events forming the basis of Plaintiff's claim occurred in either Afghanistan or Virginia.   As already discussed in Part III.B.1, *supra*, Alabama has no connection to this action other than Plaintiff's residence.   Defendant states that the "vast majority of the alleged events giving rise to [Plaintiff's] claims would have occurred in Afghanistan or outside of Alabama." (Doc. #14 at pg. 11).   Accordingly, Plaintiff seizes on the assertion that the events at the core of this case occurred in Afghanistan and maintains this factor is neutral.   The court disagrees.   Plaintiff worked for Defendant in Afghanistan and complained of Defendant's alleged illegal practices to supervisors in Afghanistan.   (*See* Doc. #30 at ¶¶ 37, 39, 50-51, 65-66, 77).   The employment decisions relating to Plaintiff were made in Virginia and Defendant's employees who processed timekeeping and payment records related to Plaintiff's employment (including his claims for worker's compensation and unemployment, which were filed in Maryland, Virginia, and New Jersey) are located outside of Alabama.   (Doc. #27-1 at ¶¶ 5-8).   Thus, the court finds this factor "weighs heavily in favor of a transfer" because Plaintiff's chosen forum is "unrelated to the conduct that forms the basis of the allegations in this action. . . ." *Liberty Nat. Life Ins. Co. v. Suntrust Bank*, 2012 WL 3849615, at *8 (N.D. Ala. Sept. 5, 2012).

6.      **Availability of Process to Compel the Attendance of Unwilling Witnesses**

Defendant argues and Plaintiff concedes that this factor is neutral in this case.   The False Claims Act provides for nation-wide service of process.   *See* 31 U.S.C. § 3731(a).   Thus, this factor has no bearing on the court's analysis.

### 7.      Relative Means of the Parties

Defendant contends that this factor is at best neutral to the court's assessment of the propriety of transfer.  Without citing case law or any other authority, Plaintiff argues that this factor favors denial of the motion to transfer because Plaintiff is an ordinary citizen suing a large, multi-national operation. (*See* Doc. #24 at pg. 15).   Plaintiff has not explained to the court "exactly how transfer prejudices [his] financial means."  *See Madison Oslin, Inc.*, 2012 WL 4730877, at *21; *see also Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998) (noting that "where proof of...disparity is not adequately provided, or does not exist, this is not a significant factor to be considered").  Moreover, Defendant's *apparent* access to greater financial resources is immaterial because "there is no assertion that [Plaintiff], who [seeks] an award of reasonable attorneys' fees and expenses, would [] incur additional costs if [his] lawyers are required to travel to [the transferee forum]").  *See United States ex rel. Urquilla-Diaz v. Kaplan University*, 2009 WL 763747 at *2, 5 (M.D. Fla. Mar. 23, 2009).  Indeed, Defendant's larger size and alleged access to greater resources "does not per se foreclose [the] opportunity to seek transfer." *See Madison Oslin, Inc.*, 2012 WL 4730877, at *21.  Therefore, the court finds that this factor is neutral and favors neither party.  But, even if it favors Plaintiff's position, this factor alone is insufficient to win the argument.

### 8.      Forum's Familiarity With Governing Law

Defendant maintains and Plaintiff concedes that this factor is neutral in this case where Plaintiff's First Amended Complaint contains a single federal statutory claim.  *See e.g., Trinity Family Ctr. v. New Frontier Media*, 761 F. Supp. 2d 1322, 1329 (M.D. Fla. 2010) (where claims were based on a violation of a federal statute "both districts would be equally knowledgeable

12

regarding the governing law. . . ").   Therefore, this factor makes no difference in evaluating a transfer.

### 9.   Trial Efficiency and Interests of Justice

The "interest of justice" factor involves "those public-interest factors of systemic integrity and fairness." *Stewart Org., Inc.*, 487 U.S. at 30.   Defendant asserts that this factor favors transfer because trial of this suit in Alabama would impose jury duty on a community unconnected to the events forming the basis of Plaintiffs claims, which occurred in Virginia or Afghanistan.   (Doc. # 14 at pg. 13).   Defendant also contends that the public interest in minimizing court congestion strongly favors transfer because according to federal court management statistics, the number of pending cases per judgeship pending in the Northern District of Alabama is nearly double the number in the Eastern District of Virginia. (Doc. #14 at pg. 13).   Plaintiff responds that asking Alabama jurors to decide whether Defendant wrongfully discharged one of its citizens imposes no hardship and that this court is aware of its docket and can provide a forum for a fair and expeditious trial.   (Doc. #24 at pg. 17).   However, Plaintiff offers no public interest factor that favors retaining this action in his chosen forum.   The court notes this factor "include[s] such concerns as ensuring speedy trial, trying related litigation together, and having a judge who is familiar with the law try the case." *Liberty Nat. Life Ins. Co.*, 2012 WL 3849615, at * 11 (citations omitted).   Because the majority of the United States-based events forming the basis of Plaintiff's First Amended Complaint occurred in Virginia, the court finds that trial efficiency and the interests of justice favor transfer of this action to the Eastern District of Virginia.   *See* Wright, Miller & Cooper, 15 Fed. Prac. & Proc. Juris. § 3854 (3d ed.) ("[T]he administration of justice is served more efficiently when the action is litigated in the forum that more clearly encompasses the locus of operative facts and consequently

13

may have a particular interest in the proper resolution of the dispute. . . .").

**IV.    Conclusion**

For the reasons stated above, on the whole, the balance of factors favor transfer of this action to the Eastern District of Virginia.  Therefore, Defendant's Motion is due to be granted.  An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this _____14th_____ day of June, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

14